# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

SHURBELLE JOHN BAPTISTE,     :
                                     :
         Plaintiff,              :
                                       :
      v.                       :      Civ. No. 12-1678-LPS
                                       :
CAROLYN W. COLVIN,            :
Acting Commissioner of Social Security,    :
                                       :
        Defendant.          :

---

Shurbelle John Baptiste, Gaithersburg, Maryland, Pro Se Plaintiff.

Charles M. Oberly, III, Esquire, United States Attorney and Patricia A. Stewart, Esquire, Special Assistant United States Attorney, of the Office of the United States Attorney, Wilmington, Delaware.

Of Counsel: Nora Koch, Esquire, Acting Regional Chief Counsel, Region III and Jillian Quick, Esquire, Assistant Regional Counsel, of the Social Security Administration, Philadelphia, Pennsylvania.

## <u>MEMORANDUM OPINION</u>

March 11, 2015
Wilmington, Delaware

STARK, U.S. District Judge:

# I. INTRODUCTION

Plaintiff Shurbelle John Baptiste ("Baptiste" or "Plaintiff"), who appears *pro se*, appeals from a decision of Defendant, Carolyn W. Colvin, the Acting Commissioner of Social Security ("Commissioner" or "Defendant"), denying her application for disability insurance benefits ("DIB"), and supplemental security income ("SSI"), under Title II and Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433, 1381-1383f. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).[1] Presently pending before the Court are cross-motions for summary judgment filed by Baptiste and the Commissioner.[2] (D.I. 18, 19) For the reasons set forth below, the Court will deny Plaintiff's motion and will grant Defendant's motion.

# II. BACKGROUND

## A. Procedural History

On May 18, 2010, Baptiste protectively filed an application for DIB and, on May 26, 2010, protectively filed an application for SSI benefits, alleging disability beginning January 31, 2009, due to bursitis, fibromyalgia, scoliosis, arthritis, abdominal hernia due to gastric bypass complications, sun UVA and UVB ray allergies, anxiety, and pelvic pubic dysfunction. The claims were denied on July 26, 2010 and, upon reconsideration, on October 8, 2010. Plaintiff filed a request for hearing on December 8, 2010. On August 30 2011, a hearing was held before an Administrative Law Judge

---

[1] Under § 405(g), "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . . Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides . . . ." 42 U.S.C. § 405(g).

[2] The Court construes D.I. 18 as Plaintiff's motion for summary judgment.

("ALJ") who issued a decision finding that Baptiste was not disabled. Plaintiff filed a request for review by the Appeals Council which was denied on October 18, 2012 and the ALJ's decision became the final decision of the Commissioner. (D.I. 11 ("Tr.") at 1-6)

On December 10, 2012, Baptiste filed a Complaint seeking judicial review of the ALJ's decision. (D.I. 2) Baptiste moved for summary judgment on July 18, 2014 (D.I. 18), and the Commissioner filed a cross-motion for summary judgment on August 21, 2014 (D.I. 19).

**B.    Medical and Mental Health Evidence**

In 2003, Plaintiff underwent gastric bypass surgery. (Tr. at 266) She was diagnosed as morbidly obese on April 8, 2010 and counseled on diet and exercise. (*Id.* at 260) As of April 11, 2011, she was diagnosed as obese, unspecified. (*Id.* at 417)

On April 15, 2009, Plaintiff presented to rheumatologist Maged I. Hosny, M.D. ("Dr. Hosny") with complaints of arthralgias on multiple joints, mainly in both knees and legs. (*Id.* at 253) Following examination, Dr. Hosny's impression was bilateral leg pain, likely myofascial in origin versus bursitis of the knees in addition to strain on the knees and legs secondary to being overweight. (*Id.* at 254) When Plaintiff returned on June 9, 2009, the leg pain was better, but she continued with intermittent knee pain. (*Id.* at 255) Plaintiff denied any pain, stiffness, or swelling in the small joints of the hands, wrists, and shoulders. (*Id.*) When Plaintiff was seen by Dr. Hosny on October 6, 2009, she was slightly better, but continued to complain of pain mostly in both trapezius muscles. (*Id.* at 256) As of February 23, 2010, Plaintiff continued with pain in both trochanteric areas and the pelvic area, taking Aleve for pain as needed. (*Id.* at 257) Dr. Hosny prescribed Tramadol for the pain. (*Id.*)

In October 2009, when Baptiste was 6 ½ months pregnant, Dr. Michael B. Peters, Jr., ("Dr. Peters") "recommend[ed] that [she] exercise more to augment weight loss and to improve overall

2

health and fitness." (*Id.* 264, 267) Plaintiff underwent a hernia repair in November and, by the following month, she reported "[feeling] well overall" and that the "pain [was] well controlled." (*Id.* at 262, 270-71, 319) Dr. Peters concluded that Plaintiff was "[d]oing well post op." (*Id.* at 260) In April 2010, Plaintiff was "[o]verall doing well" and had no pain. (*Id.*) Her abdomen was obese, there was no tenderness or guarding. (*Id.*) In May 2010, Plaintiff reported having the same symptoms as prior to the repair, but upon examination there were no hernias, masses, or tenderness. (*Id.* at 258) Dr. Peters stated that Plaintiff had "[a]bsolutely no pain on exam today" and Plaintiff was to follow up in two months. (*Id.*)

Plaintiff received treatment for pain in the hips, shoulder, and upper back from Susan L. Cowdery, M.D. ("Dr. Cowdery") at Christiana Care Rheumatology from May 25, 2010 to July 26, 2010. (*Id.* at 274-82, 346-55) Dr. Cowdery ran a number of tests and her impression was chronic pain syndrome, vitamin D deficiency, genetic susceptibility to other disease, other dermatitis due to solar radiation, and osteoarthritis with a plan to screen for other rheumatic disorder. (*Id.* at 286, 355) Diagnostic testing of the lumbar spine showed small osteophytes with no fracture or subluxation, and the cervical spine had no fractures or subluxation with only a few tiny osteophytes. (*Id.* at 351) Dr. Cowdery states that Plaintiff has experienced chronic pain since her teenage years and notes that a referral to pain management has been suggested and declined. (*Id.*)

Plaintiff underwent a course of physical therapy from June 2, 2010 to June 30, 2010. (*Id.* at 288-92) Plaintiff reported painful hips for over a year, and diagnoses of fibromyalgia and bursitis of the hips. (*Id.* at 288) Plaintiff indicated that the pain was constant, she had difficulty falling asleep, is awakened by pain, her activities are limited due to pain/fatigue, she is unable to stand to cook or do the dishes, and she has help with these activities. (*Id.*) Diagnoses were myalgia, myositis NOS,

3

and enthesopathy[3] of the hip. (*Id.*) As of June 30, 2010, Plaintiff had difficulty with arm movements secondary to UE pain/discomfort. (*Id.* at 292) Plaintiff took part in initial aquatics without increased hip pain. (*Id.*)

Plaintiff received treatment from pain management specialists David Rodriguez, D.O. ("Dr. Rodriguez") and Prabhdeep Grawal, M.D. ("Dr. Grawal") at Advanced Pain Management Services from November 12, 2010 to July 22, 2011. (*Id.* at 391-99, 403-15, 418-23, 432-34) Plaintiff presented with multiple joint pains. (*Id.* at 393) She had been diagnosed with rheumatoid arthritis due to family history but, upon further evaluation, the diagnosis was changed to psoriatic arthritis.[4] (*Id.*) Plaintiff was diagnosed with porphyria[5] in 2010. (*Id.* at 433) Drs. Rodriguez and Grawal prescribed medications and physical therapy and both noted that Plaintiff "is using oxycodone IR 15-mg and is functional on this" and continued Plaintiff on the medication. (*Id.* at 393, 396, 399, 420, 423, 433) Upon physical examination, Plaintiff appeared well nourished, well developed, and in no acute distress. (*Id.* at 392, 395, 398-99, 407, 410, 414-15, 419, 422, 433) Her neck was supple with no tenderness and only mild pain on range of motion, her low back had tenderness and mild pain with motion, and straight leg raising was negative. (*Id.*) Her extremities had no edema or cyanosis. (*Id.*) Neurologically, Plaintiff's memory was intact, her cranial nerves were grossly intact, she had no motor weakness or sensory loss, and her balance and gait were intact. (*Id.* at 392, 395,

---

[3] A disease occurring at the site of attachment of muscle tendons and ligaments to bones or joint capsules. *The American Heritage Stedman's Medical Dictionary* 267 (2d ed. 2004).

[4] Combined psoriasis and arthritis, often affecting the interphalangeal joints. *The American Heritage Stedman's Medical Dictionary* at 678.

[5] Any of several disorders of porphyrin metabolism, usually hereditary, characterized by large amounts of porphyrins in the blood and urine. *The American Heritage Stedman's Medical Dictionary* at 652.

398-99, 407, 410, 414-15, 419, 422, 433)  She did not demonstrate unusual anxiety or evidence of depression.  (*Id.*)

In July 2010, State agency physician Michael Borek, D.O. ("Dr. Borek") reviewed the evidence in connection with Plaintiff's initial application and opined that Plaintiff could perform a limited range of light work that involved occasional lifting of twenty pounds and frequent lifting of ten pounds at most, sitting for six hours, and standing/walking for two hours, with numerous postural limitations and some environmental limitations.  (*Id.* at 47, 293-98)  In October 2010, State agency physician Dr. Vinod Kateria, M.D. ("Dr. Kateria") affirmed Dr. Borek's opinion.  (*Id.* at 50, 357-63)

On July 20, 2010, Joseph Keyes, Ph.D. ("Dr. Keyes"), a psychologist, consultatively examined Plaintiff at the request of the State agency.  (*Id.* at 299-306)  Plaintiff reported that she was not receiving any psychotropic medications.  (*Id.* at 300)  Dr. Keyes found Plaintiff neatly dressed with excellent personal hygiene and grooming, her posture and gait were normal, and she had an overall appropriate appearance.  (*Id.*)  Plaintiff's speech was clear and easy to understand, abstract thinking was in the low average to average range, memory was intact, and she was able to perform serial threes to forty with no errors.  (*Id.* at 300-01)  Plaintiff's social and interpersonal skills were appropriate but mildly limited.  (*Id.* at 300)  Plaintiff maintained eye contact, answered questions, and initiated appropriate conversation.  (*Id.*)  She was cooperative, had a pleasant attitude, and an appropriate affect that was tearful at one point.  (*Id.* at 301)  Plaintiff was not easily distracted, was not impulsive, and had adequate insight and judgment.  (*Id.*)

Dr. Keyes assessed Plaintiff's IQ at 92, which indicates average/normal cognitive

Functioning, and a Global Assessment of Functioning ("GAF")[6] score of 65. (*Id.*) Dr. Keyes opined that Plaintiff had moderate difficulties in sustaining work performance and attendance in a normal work-setting, and that she generally had no or only mild impairment in such tasks. (*Id.* at 304-05) He diagnosed Plaintiff as having an adjustment disorder with depressive features. (*Id.* at 303)

On July 22, 2010, State agency psychologist Douglas Fugate, Ph.D. ("Dr. Fugate"), reviewed the evidence in connection with Plaintiff's initial application and opined that Plaintiff did not have a severe psychiatric condition that would interfere with her ability to work. (*Id.* at 307, 317) On October 5, 2010, State agency psychologist Carene Tucker-Okine, Ph.D. ("Dr. Tucker-Okine") affirmed Dr. Fugate's opinion. (*Id.* at 364, 374)

On January 21, 2011, Dr. Rodriguez completed a residual functional capacity ("RFC") evaluation. (*Id.* at 400-02) He determined that Plaintiff was not capable of performing sedentary work on a regular and continuing basis due to pain throughout her body becoming worse, along with fatigue and depression interfering with her usual activities of daily living as well as occupational activities, and a family history of inflammatory arthritis. (*Id.* at 402) On April 7, 2011, Dr. Rodriguez completed a medical statement concerning chronic pain syndrome, in which he indicated that Plaintiff suffers from severe pain due to multiple joint syndrome, psoriatic arthropathy, rheumatoid arthritis, and disorders of porphyrin metabolism that cause marked restrictions in

---

[6] The GAF scale is used to report the "clinician's judgment of the individual's overall level of functioning" in light of his psychological, social, and occupational limitations. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 32-34 (4th ed. text rev. 2000). A GAF of 61 to 70 indicates some mild symptoms or some difficulty in social, occupational or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships.

performing daily activities, maintaining social functioning, and maintaining concentration, persistence, or pace. (*Id.* at 389-90)

On April 11, 2011, Plaintiff presented to Anu Shurma, M.D. ("Dr. Shurma") with complaints of severe chronic pain in the back and knee, minimally relieved with oxycodone. (*Id.* at 416) Plaintiff reported pain in the hands and feet, primarily, worse in the morning and in the middle of the night. (*Id.*) Upon examination, Plaintiff's upper and lower extremity joints had no synovitis, no effusions, and she had full range of motion. (*Id.*) There was no edema. (*Id.*) Neurologically, there was sensory diminished sensations, grossly intact at the bilateral upper and lower extremities. (*Id.*) Tenderpoints were not present on palpation. (*Id.*) Plaintiff was assessed with psoriatic arthropathy and obesity. (*Id.* at 417)

When Plaintiff presented to the Advanced Pain Management Services on July 22, 2011, her history included multiple joint pain, moderate to severe, that occurs constantly and is worsening. (*Id.* at 432) The pain is bilateral, aching, dull, and throbbing, but there is no radiation. (*Id.*) The pain is aggravated by bending, climbing and descending stairs, lifting, movement, pushing, sitting, walking, and standing. (*Id.*) It is relieved by heat, pain medication, and rest. (*Id.*) Associated symptoms include decreased mobility, night pain, night-time awakening, tingling in the arms and legs, and tenderness. (*Id.*) Chronic problems include psoriatic arthropathy, chronic pain syndrome, rheumatoid arthritis, disorders of porphyrin metabolism, and pain in joint involving other specified sites. (*Id.*)

Notes indicate that Plaintiff had been placed on Methotrexate.[7] (*Id.* at 433) Plaintiff

_____

[7] Used to treat severe psoriasis that cannot be controlled by other treatments. It is also used along with rest, physical therapy, and sometimes other medications to treat severe active rheumatoid

continued to take oxycodone and is functional on it. (*Id.*) She was prescribed Dilaudid for flare. (*Id.*)

## C. The Administrative Hearing

An administrative hearing took place on August 30, 2011, before the ALJ, with testimony from Plaintiff, who was represented by counsel, and vocational expert Dr. James M. Ryan ("VE"). (*Id.* at 29)

### 1. Plaintiff's Testimony

Plaintiff was born on December 14, 1973 and has completed four or more years of college. (*Id.* at 33) She has worked as a substitute teacher, mental health aide, and administrative assistant. (*Id.* at 34) She stopped working in early 2009 due to severe pain. (*Id.* at 33-34, 36) Baptiste has two small children; her mother and the children's father help with their activities. (*Id.* at 35) Tests performed after her second pregnancy indicated that Plaintiff has arthritis. (*Id.* at 36)

Plaintiff is 5'3" tall and weighs 233 pounds, and her physician has recommended that she lose weight. (*Id.* at 36) Plaintiff testified that she must sit down after ten minutes of standing. (*Id.* at 37) She would rather sit than stand and can sit for approximately 20 minutes before she has pain on the right side of her thigh area, down to her feet. (*Id.*) Plaintiff cannot grip or hold much because she does not have strength. (*Id.* at 38) She can hold, but not carry, thirty pounds. (*Id.*) She can carry pencils and light-weight coffee cups. (*Id.*)

Plaintiff takes oxycodone by tablets and also uses a transdermal patch to relieve the pain of her psoriatic arthritis. (*Id.* at 39) Plaintiff testified that her pain is increasing and her physicians are

---

arthritis. *See* http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682019.html#why (Mar. 9, 2015).

going to see what can be done about increasing the medication. The pain keeps her up through the night. *(Id. at 42)* Plaintiff takes Savella for fibromyalgia, but it does not "work much," as well as a dose of Methotrexate every Saturday evening. *(Id.)* The Methotrexate causes fatigue that typically lasts until Tuesday or Wednesday, as well as nausea. *(Id. at 40-41)* Plaintiff takes folic acid for relief, but it does not stop the vomiting. *(Id.)*

## 2. Vocational Expert's Testimony

The VE testified that Plaintiff's past relevant work was at the skilled light exertional level. *(Id. at 43)* The ALJ posed a hypothetical question and asked the VE if a person with Plaintiff's age, education, and experience, who could perform no more than sedentary[8] exertional activity as described in the Commissioner's Regulations; who should do no climbing of ropes, ladders, or scaffolds; can do stooping, but only on an occasional basis; should avoid concentrated exposure to extreme cold, sunlight, vibration, and avoid work around dangerous machinery or unprotected heights; and has moderate difficulties in concentration, persistence, or pace which results in being limited to performing simple, routine, unskilled tasks, could perform any of Plaintiff's past work. *(Id. at 43)* The VE responded that such a person could not, but that there were sedentary jobs a person could do, such as a quality control worker, a finish machine tender, and a grading and sorting worker. *(Id. at 43-44)*

When the ALJ added to the hypothetical that the person could stand and walk less than one hour total in an eight hour day, sit less than five hours total in an eight hour day and the remaining

---

[8] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. § 404.1567(a).

two hours the person would need to lie down and rest due to pain, fatigue, and side effects of medications, the VE opined that such a person could not perform the jobs identified or any other type of work. (*Id.* at 44) The VE further opined that if the person was unable to perform 40 hours per week due to the side effects of medications, the person would not be capable of full-time employment. (*Id.* at 45)

**D.    The ALJ's Findings**

The ALJ concluded that Plaintiff's medical conditions were not disabling. In reaching this conclusion, the ALJ first considered the nature and severity of Plaintiff's physical and mental impairments. (*Id.* at 16-19) The ALJ determined that Plaintiff's back impairments, depression, anxiety disorders, and obesity were severe impairments. (*Id.* at 16) The ALJ found that although Plaintiff's impairments were subjectively severe, there was insufficient evidence of record to meet the requirements of a listing in 20 CFR Part 404, Subpart P, Appendix 1.

The ALJ determined that Plaintiff could not perform her past relevant work. (*Id.* at 21) The ALJ found that Plaintiff could perform less than the full range of unskilled sedentary work that involved no climbing of ropes, ladders, or scaffolds; occasional stooping; no concentrated exposure to sunlight, extreme cold, or vibrations; no exposure to dangerous machinery or unprotected heights; and only unskilled tasks to account for moderate limitations in concentration, persistence, or pace due to pain, depression, and medication side effects, taking into consideration the VE's opinion that a hypothetical individual with those limitations could perform such representative occupations as a quality control worker, a finish machine tender, and a grading and sorting worker. (*Id.* at 19, 21-22) The ALJ concluded that Plaintiff was capable of performing work that exists in significant numbers in the national economy and, therefore, determined that she was not disabled from January 31, 2009 through the date of the May 26, 2010 decision. (*Id.* at 22)

10

## III. LEGAL STANDARDS

### A. Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be -- or, alternatively, is -- genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise

11

properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

**B.    Review of the ALJ's Findings**

The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. § 405(g); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Third Circuit has explained that "a single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence -- particularly certain types of evidence (e.g., that offered by treating physicians) -- or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the inquiry is not whether the Court would have made the same determination but, rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

12

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour*, 806 F.2d at 1190. The Court's review is limited to the evidence that was actually presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001). However, evidence that was not submitted to the ALJ can be considered by the Appeals Council or the District Court as a basis for remanding the matter to the Commissioner for further proceedings, pursuant to the sixth sentence of 42 U.S.C. § 405(g). *See Matthews*, 239 F.3d at 592. "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." *Gonzalez v. Astrue*, 537 F. Supp. 2d 644, 657 (D. Del. 2008) (internal quotation marks omitted). Even if the reviewing Court would have decided the case differently, it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See Monsour*, 806 F.2d at 1190-91.

## IV.    DISCUSSION

### A.    Disability Determination Process

Titles II and XVI of the Social Security Act, 42 U.S.C. § 423(a)(1)(D) and § 1382(a), "provide[] for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). For the purposes of DIB and SSI, a "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 423(d)(1)(A), § 1382c(a)(3). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to

13

do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A), § 1382c(a)(1)(B); *see also Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003). In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. § 404.1520, § 426.920; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). If a finding of disability or nondisability can be made at any point in the sequential process, the Commissioner will not review the claim further. *See* 20 C.F.R. § 404.1520(a)(4), § 416.920(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. § 404.1520(a)(4)(i), § 416.920(a)(4)(i) (mandating finding of nondisability when claimant is engaged in substantial gainful activity). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *See* 20 C.F.R. § 404.1520(a)(4)(ii), § 416.920(a)(4)(ii) (mandating finding of nondisability when claimant's impairments are not severe). If the claimant's impairments are severe, at step three the Commissioner compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. § 404.1520(a)(4)(iii), § 416.920(a)(4)(iii); *Plummer*, 186 F.3d at 428. When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii), § 416.920(a)(4)(ii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See* 20 C.F.R. § 404.1520(e), § 416.920(e).

At step four, the Commissioner determines whether the claimant retains the RFC to perform her past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), § 416.920(a)(4)(iv) (stating claimant is not disabled if able to return to past relevant work); *Plummer*, 186 F.3d at 428. A

claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Fargnoli v. Halter*, 247 F.3d 34, 40 (3d Cir. 2001). "The claimant bears the burden of demonstrating an inability to return to her past relevant work." *Plummer*, 186 F.3d at 428.

If the claimant is unable to return to her past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude her from adjusting to any other available work. *See* 20 C.F.R. § 404.1520(a)(4)(v) & (g), § 416.920(a)(4)(v) & (g) (mandating finding of non-disability when claimant can adjust to other work); *Plummer*, 186 F.3d at 428. At this last step, the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. *See Plummer*, 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Id.* In making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments. *See id.* At this step, the ALJ often seeks the assistance of a VE. *See id.*

## B.    The Issues Raised on Appeal

Baptiste presents four issues in her appeal and moves for summary judgment on the grounds that the ALJ: (1) improperly substituted his own opinion for those of Plaintiff's treating physicians in finding she was not disabled; (2) failed to detail how he considered Plaintiff's obesity; (3) failed to properly evaluate Plaintiff's fully supported allegations of pain and incorrectly evaluated her RFC; and (4) failed to provide an accurate hypothetical to the VE and failed to properly include the deleterious side effects of Methotrexate on Plaintiff's RFC.

The Commissioner moves for summary judgment on the grounds that the ALJ: (1) followed the controlling regulations in evaluating opinion evidence; (2) followed the controlling regulations in

15

evaluating the credibility of Plaintiff's complaints; (3) considered Plaintiff's obesity in accordance

with SSR 02-1p; and (4) the hypothetical question to the vocational expert adequately reflected

Plaintiff's work capacity as found by the ALJ.

The Court considers each of the issues in turn.

### 1. Medical Opinions

Baptiste argues that the ALJ improperly substituted his opinion for those of her treating

physicians, while the Commissioner argues that the ALJ followed the controlling regulations in

evaluating the opinion evidence.

In *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000), the Court of Appeals for the Third Circuit

set forth the standard for evaluating the opinion of a treating physician, stating that "[a] cardinal

principle guiding disability eligibility determinations is that the ALJ accord treating physicians'

reports great weight, especially 'when their opinions reflect expert judgment based on a continuing

observation of the patient's condition over a prolonged period of time.'" *Id.* at 317 (quoting

*Plummer*, 186 F.3d at 429). The ALJ must consider the medical findings that support a treating

physician's opinion that the claimant is disabled. *See Adorno v. Shalala*, 40 F.3d 43, 48) (3d Cir. 1994).

However, opinions of a treating physician are entitled to controlling weight only when they are well-

supported and not inconsistent with other substantial evidence in the record. *See Hall v. Commissioner

of Soc. Sec.*, 218 F. App'x 212, 215 (3d Cir. Feb. 22, 2007) (affirming ALJ's decision to give little

weight to treating physician's reports because of "internal inconsistencies in various reports and

treatment notes . . . as well as other contradictory medical evidence"); *Fargnoli*, 247 F.3d at 43.

Where the opinion of a treating physician conflicts with that of a non-treating, non-

examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason

or for the wrong reason," *Plummer*, 186 F.3d at 429, and he must give some reason for discounting

the evidence he rejects, *see Diaz v. Commissioner of Soc. Sec.*, 577 F.3d 500, 505-06 (3d Cir. 2009). In

choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences

from medical reports" and may reject "a treating physician's opinion outright only on the basis of

contradictory medical evidence" and not due to his or her own credibility judgments, speculation, or

lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988). "[A]n

ALJ is not free to set his [or her] own expertise against that of a physician who presents competent

evidence." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985). An ALJ impermissibly substitutes

his "own judgment for that of a physician" when he independently reviews and interprets the

objective medical evidence. *Id.*

Here, the ALJ detailed his reasons for affording less weight to the opinions of Dr.

Rodriquez. The ALJ accorded Dr. Rodriguez's opinions little weight, finding that Dr. Rodriguez

identified disabling limitations even though his records did not support said limitations. (Tr. at 20)

The ALJ made specific reference to what he found to be inconsistencies between Dr. Rodriguez's

opinions that Plaintiff was unable to perform sedentary work and his July 22, 2011 report that

Plaintiff was in no acute distress, there were no sensory or motor abnormalities, her balance and gait

were normal, and no unusual anxiety or evidence of depression was noted. (*Id.* at 20) The evidence

of record as outlined by the ALJ supports the ALJ's evaluation of the reports of Dr. Rodriquez.

The State agency medical consultants determined that Plaintiff could perform a limited range

of work that involved occasionally lifting twenty pounds, frequently lifting ten pounds, standing at

least two hours in an eight-hour workday, sitting about six hours in an eight-hour day, and unlimited

pushing and pulling but with restricted postural and environmental limitations. The ALJ considered

the State agency medical consultants' opinions and assigned significant weight to their opinions,

noting that their opinions were largely consistent with the evidence of record as a whole. *See*

*Chandler v. Commissioner of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (referring to SSR 96-6p and

stating that State agency opinions merit significant consideration, because "State agency medical and psychological consultants . . . are experts in the Social Security disability programs, . . . 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] . . . to consider their findings of fact about the nature and severity of an individual's impairment(s).").

After a careful review of the evidence of record and considering Plaintiff's and Defendant's positions, the Court finds that the ALJ did not improperly substitute his opinion for that of Dr. Rodriquez and did not err in the assignment of weight to the opinions of Dr. Rodriquez.

### 2. Plaintiff's Obesity

The parties disagree as to whether the ALJ properly considered Plaintiff's obesity. Social Security Regulation SSR 02–1p states that "[the Commissioner] will find that obesity is a 'severe' impairment" when it significantly limits an individual's ability to do basic work activities. Social Security Ruling 02–1P, 2002 WL 34686281 (S.S.A. Sept. 12, 2002). In addition, the Commissioner may find that obesity in combination with other impairments may be equivalent to an impairment in the Listings. *Id.* An ALJ must meaningfully consider a plaintiff's obesity, individually and in combination with other impairments, at step three and every subsequent step of the disability analysis. *See Diaz*, 577 F.3d at 504. Meaningful consideration requires that the ALJ "set forth the reasons for his decision." *Burnett v. Commissioner of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). Thus, an ALJ must "provide a 'discussion of the evidence' and an 'explanation of reasoning' for his conclusion sufficient to enable meaningful judicial review." *Diaz*, 577 F.3d at 504 (quoting *Burnett*, 220 F.3d at 120).

At step two, the ALJ determined that Plaintiff had several severe impairments, including obesity. (Tr. at 16) The ALJ noted that Plaintiff's obesity adversely affected her other physical impairments, reducing her RFC to sedentary, and further that pursuant to SSR 02-1p, the effects of

obesity and Plaintiff's other impairments restrict Plaintiff to sedentary tasks. (*Id.* at 19) The ALJ applied this RFC at subsequent steps of the analysis. Accordingly, after careful review of the evidence of record, the Court finds that the ALJ did not err in his consideration of Plaintiff's obesity condition.

### 3. Plaintiff's Pain and Residual Functional Capacity

Plaintiff argues that the ALJ failed to properly evaluate her allegations of pain and incorrectly evaluated her RFC, while Defendant contends that the ALJ followed the controlling regulations in evaluating the credibility of Plaintiff's complaints.

The ALJ's "determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling 96-7p, 1996 WL 374186, at *3 (S.S.A. July 2, 1996); *see also Schaudeck v. Commissioner of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999). Pursuant to 20 C.F.R. §§ 404.1529 and 416.929, the Commissioner must consider all "symptoms, including pain," in the disability determination. Statements of pain alone are not enough to establish a disability; the claimant must also present objective medical evidence to show that the medical impairment "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(a); 416.929(a); SSR 96-7p. Once the Commissioner has determined from the "medical signs or laboratory findings" that the claimant has an impairment which could reasonably produce the pain, then the Commissioner must evaluate the intensity, persistence, and limiting effects of the Plaintiff's symptoms to determine how the pain limits the claimant's capacity for work. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); SSR 96-7p.

In determining the limits on the claimant's capacity for work, the Commissioner will consider the entire case record, including evidence from the treating, examining, and consulting physicians, observations from agency employees, and other factors such as the claimant's daily activities, descriptions of the pain, precipitating and aggravating factors, type, dosage, effectiveness, and side effects of medications, treatment other than medication, and other measures used to relieve the pain. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p. In addition, the ALJ should account for the claimant's statements, appearance, and demeanor; medical signs and laboratory findings; and physicians' opinions regarding the credibility and severity of plaintiff's subjective complaints. *See* Social Security Ruling 96-7p. The Commissioner also will look at inconsistencies between the claimant's statements and the evidence presented. *See* 20 C.F.R. §§ 404.1529(c)(4); 416.929(c)(4). Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about her limitations or symptoms is less than fully credible. *See Burns v. Barnhart*, 312 F.3d 113, 129-30 (3d Cir. 2002).

With regard to a claimant's credibility, an ALJ must give great weight to the claimant's testimony "when this testimony is supported by competent medical evidence." *Schaudeck*, 181 F.3d at 433. The ALJ "has the right, as the fact finder, to reject partially, or even entirely, such subjective complaints if they are not fully credible." *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974). Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence he rejects and the reasons for discrediting such evidence. *See Burnett*, 220 F.3d at 121. Ordinarily, an ALJ's credibility determination is entitled to great deference. *See Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003).

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they were inconsistent with the RFC

assessment. Plaintiff's assertion that the ALJ failed to consider her complaints of pain and objective findings related thereto is not supported by the record. To the contrary, the ALJ considered Plaintiff's complaints of pain and was permitted to conclude that those complaints were not fully credible and did not limit her ability to perform unskilled sedentary work. The ALJ determined that Plaintiff's complaints were inconsistent with the record, noting that she was functional on oxycodone and continued with the medication. In addition, the ALJ found that Plaintiff would have limitations with concentration, persistence or pace due, in part, to pain, and incorporated numerous limitations related to Plaintiff's complaints of pain in his RFC finding. (*See* Tr. at 9 (RFC finding moderate difficulties in concentration, persistence or pain due to pain, depression and the side effects of her medications)) In addition, the ALJ thoroughly analyzed the medical evidence, including relatively mild or unremarkable diagnostic findings that were not consistent with a finding of totally disabling pain. (*See* Tr. 17-20 and medical records cited therein)

Accordingly, the Court finds that substantial evidence supports the ALJ's ruling, his rejection of Plaintiff's testimony as not fully credible, and his evaluation of Plaintiff's RFC.

### 4. The Hypothetical

Finally, Baptiste argues that the ALJ failed to properly include the deleterious side effects of Methotrexate on her RFC. The Commissioner contends that the hypothetical question posed to the VE adequately reflected Plaintiff's work capacity as determined by the ALJ.

As the Third Circuit explained in *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984):

Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert. The ALJ will normally ask the expert whether, given certain assumptions about the claimant's physical capability, the claimant can perform certain types of jobs, and the extent to which such jobs exist in the national economy. While the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the

21

question accurately portrays the claimant's individual physical and mental impairments.

Reliance on an expert's answer to a hypothetical question will not constitute substantial evidence unless all credibly established limitations are included; remand is required where the hypothetical question is deficient. *See Anderson v. Astrue*, 825 F. Supp. 2d 487, 498 (D. Del. 2011). "A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

Third Circuit case law and governing regulations have provided guidance on whether a limitation is "credibly established:"

> Limitations that are medically supported and otherwise uncontroverted in the record, but that are not included in the hypothetical question posed to the expert, preclude reliance on the expert's response. Relatedly, the ALJ may not substitute his or her own expertise to refute such record evidence. Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible. The ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason. Finally, limitations that are asserted by the claimant but that lack objective medical support may possibly be considered nonetheless credible. In that respect the ALJ can reject such a limitation if there is conflicting evidence in the record, but should not reject a claimed symptom that is related to an impairment and is consistent with the medical record simply because there is no objective medical evidence to support it.

*Rutherford*, 399 F.3d at 554).

The final responsibility for determining a claimant's RFC is reserved to the Commissioner. *See Breen v. Commissioner of Soc. Sec.*, 504 F. App'x 96 (3d Cir. Nov. 14, 2012) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)).

Plaintiff argues that the ALJ here erred in posing the hypothetical questions, referring to the limitations as opined to by Dr. Rodriquez. However, as discussed above, the ALJ accorded little weight to the opinions of Dr. Rodriquez. Instead, the hypothetical questions posed by the ALJ

reflected the opinions of the State agency consultants, opinions to which the ALJ accorded significant weight.

In addition, Plaintiff argues that the ALJ erred in not considering the effects of Methotrexate. The hypothetical posed, however, included consideration of "moderate difficulties in concentration, persistence or pace" and, as determined the ALJ, Plaintiff had moderate difficulties in concentration, persistence, or pace due, in part, to the side effects of her medication." (Tr. at 19)

The Court finds that the first hypothetical -- which limited the jobs that Plaintiff could perform as less than the full range of sedentary work -- accurately conveyed all of Plaintiff's limitations as reflected in the RFC (an RFC the Court has already found is based on substantial evidence of record). The more limiting hypothetical posed at the hearing, with regard to the effects of Methotrexate, that the ALJ did not discuss in his decision, was based on Plaintiff's testimony regarding the side effects of the medication but, as discussed, the ALJ found Plaintiff not fully credible (a finding the Court has already found is based on substantial evidence of record). Hence, the ALJ was not required to incorporate the more limiting hypothetical into his decision. *See Johnson v. Commissioner of Soc. Sec.*, 398 F. App'x 727, 736 (3d Cir. Oct. 27, 2010) (finding ALJ did not need to make explicit his reason for not considering a second hypothetical which included a restriction which was not included in the RFC, since that hypothetical was of no relevance).

The ALJ's first hypothetical question to the VE accurately conveyed Plaintiff's limitations and the VE's testimony provided substantial evidence for the ALJ's conclusion. The Court finds that the ALJ did not fail to provide an accurate hypothetical to the VE.

## V. CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's motion for summary judgment and will grant Defendant's motion for summary judgment.

An appropriate Order will be entered.